

**Jeffrey R. Maguire**, Esq., Partner    o: (212) 939-7529    f: (212) 531-6189
a: 445 Hamilton Avenue, Suite 1500, White Plains, NY 10601
e: jmaguire@stevensonmarino.com

June 11, 2025

<u>Via ECF</u>
The Honorable Lara K. Eshkenazi
United States Magistrate Judge for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Ismail v. Fastenal Company et al.*
            <u>*Docket No.: 24-cv-6671-OEM-LKE*</u>

Dear Judge Eshkennazi:

This firm represents Plaintiff Alaaeldin Ismail in the above-referenced action involving Plaintiff's wage claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Fastenal Company ("Defendant," and together with Plaintiff as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of Plaintiff's claims as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Pursuant to the Court's Order dated June 5, 2025, a copy of the Parties' unexecuted settlement agreement is attached hereto as **Exhibit 1.**

## I.    **RELEVANT PRELIMINARY STATEMENT**

On September 23, 2024, Plaintiff filed this action against Defendant on behalf of himself and others similarly situated. Subsequently, Plaintiff learned that Defendant had already entered into a class action settlement agreement substantially resolving the NYLL claims that Plaintiff asserted in the Complaint, entitled *Petrosino v. Fastenal Company*, 612943/24 (Sup. Ct., Nassau Cty. 9/5/24). Plaintiff opted out of that settlement,[1] and the parties agreed to discuss resolution on a single-plaintiff basis.

On March 28, 2025, the parties participated in a mediation with a member of the Eastern District of New York's mediation program, Anthony DiCaprio, who has extensive experience in wage and hour actions. Although the parties did not settle during the mediation, the progress made

---

[1] Defendant disputes that Plaintiff timely and properly opted out of the referenced class settlement.

The Honorable Lara K. Eshkenazi
June 11, 2025
Page 2 of 7

during the mediation ultimately resulted in the parties settling the action in principle to resolve the matter in full for $30,000.00. As the Court is aware, the parties were subsequently unable to execute a settlement agreement based upon the disagreement over a mutual general release provision. Notwithstanding that disagreement, the parties hereby submit the unexecuted settlement agreement with the mutual general release provision pursuant to the Court's Order dated Jun 5, 2025.

Additionally, Plaintiff's counsel respectfully submits an application for one-third of the settlement amount, $10,000.00, in attorneys' fees. Plaintiff's counsel additionally seeks reimbursement of the litigation expenses in the amount of $413.75.

For the following reasons, the Court should approve the Parties' settlement of Plaintiff's FLSA claims as fair and reasonable.

## II.     THE AGREEMENT IS FAIR AND REASONABLE

FLSA claims may be settled and dismissed with prejudice under Rule 41 if such settlement is approved by the Court. *Cheeks*, 796 F.3d at 206-07. Courts approve FLSA settlements "when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *2 (S.D.N.Y. May 25, 2018) (citing *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.*

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.*

### A.  Range of Possible Recovery

In his Complaint, Plaintiff alleges that Defendant hired him to work as a Supply Chain Support on October 13, 2021. Plaintiff worked in this role until August 31, 2023. As a Supply Chain Support, Plaintiff alleges that he was responsible for customer outreach as well as delivering merchandise, stocking boxes, and emptying palettes. Plaintiff further alleges that throughout his

The Honorable Lara K. Eshkenazi
June 11, 2025
Page 3 of 7

employment, he routinely worked five (5) days per week, working from 8:00 a.m. until 5:00 p.m., or from 7:30 a.m. until 4:00 p.m., without an uninterrupted meal break. Thus, Plaintiff routinely worked for Defendant approximately forty-two and one-half (42.5) to forty-five (45) hours per workweek. Plaintiff alleges that as a result of an auto-deduction policy, for the entirety of his employment, Defendant failed to pay Plaintiff for the hours that he worked over forty each week, thus depriving him of the statutorily required overtime rate of one and one-half times his regular rate for these hours exceeding forty.

Plaintiff also alleges that he mainly performed manual work for Defendant, including delivering merchandise, stocking boxes, and emptying palettes for the entirety of his employment. Plaintiff's alleges that because he was a manual worker, Defendant was required to pay him on a weekly basis, but Defendant instead paid him on a bi-weekly basis in violation of the NYLL.

In response, Defendant took the position that it maintains complete and accurate time and pay records, and that such records show that Plaintiff was paid overtime compensation when overtime hours were worked. Additionally, Defendant contended that Plaintiff was responsible for punching in and out, including for lunch breaks, through a clock-based system. Defendant provided Plaintiff's time records in support of its position. With respect to Plaintiff's untimely wage payment claim, Defendant's position is that Plaintiff does not qualify as a manual worker entitled to weekly pay, and that Defendant otherwise paid Plaintiff all wages owed. As to all claims, Defendant maintained that Plaintiff was subject to an applicable release of claims as a result of a separate class action resolution.

Plaintiff calculated his overtime damages, including actual and liquidated to be $29,360.01, which assumes ninety-eight weeks worked, at regular rates of $19.68 per hour and $20.51 per hour (following an increase of pay on January 1, 2023). According to these damages, Plaintiff's recovery of $30,000.00 represents more than 100% of Plaintiff's maximum recovery of his damages, including liquidated damages. Courts have found that settlements exceeding 25% of maximum possible recovery to be reasonable, highlighting the fairness of this agreement under *Cheeks*. *See Lesser v. TIAA Bank, FSB*, 2020 WL 6151317, at *2 (S.D.N.Y. Oct. 20, 2020); *Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances).

While Plaintiff also alleged NYLL pay frequency claims, "[w]hen a proposed settlement agreement resolves both FLSA and non-FLSA claims, [the court] need only evaluate whether the FLSA portion of the settlement is fair and reasonable. *Adams v. By Design LLC*, No. 21-CV-6157 (VSB), 2024 WL 5265702, at *2 (S.D.N.Y. Dec. 31, 2024). Even if the Court were to evaluate Plaintiff's pay frequency claims, the damages are in question following the proposed changes to the NYLL concerning these claims.

Moreover, based on the records provided by Defendant, Plaintiff's best possible recovery was likely substantially less than his maximum recovery based on his allegations. This is because

The Honorable Lara K. Eshkenazi
June 11, 2025
Page 4 of 7

there were records provided that called into question whether an hour was automatically deducted each day as Plaintiff alleged. Thus, as discussed at the mediation, $30,000.00 represented a substantial portion of the money Plaintiff alleged he was owed based on the damages he could possibly prove at trial. Accordingly, the Parties submit that this agreement is both fair and reasonable.

### B.  Avoidance of Burdens, Expenses, and Litigation Risks

Further, settling at this stage "avoids the risks and burdens of litigation . . . as well as the costs, uncertainties, and delays inherent in litigation of this nature." *See Lesser*, 2020 WL 6151317, at *2. Indeed, were a settlement not reached at this stage, the Parties would have then proceeded with litigation. Should that have happened, Plaintiff would have faced the risk of: (1) Defendant succeeding in its defense with respect to Plaintiff's overtime claims; and (2) change of law eliminating or severely limiting his recovery under the NYLL pay frequency claim.

Continued litigation could have included motion practice, a trial, post-trial motions, and a potential appeal. Inevitably, this would result in a delayed resolution of Plaintiff's claims at an even greater expense. This settlement eliminates all of those burdens, costs, and risks, which in totality weighs in favor of approval of the settlement.

### C.  Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, this settlement was reached before motion practice and trial. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the negotiations were aggressively pursued on both sides to come to a fair and reasonable compromise. Indeed, the fact that the parties' settlement was reached through the assistance of an experienced mediator strongly indicates a fair and reasonable settlement.

Furthermore, the parties' agreement does not contain a confidentiality clause or an overly broad non-disparagement clause. *See Ream v. Berry-Hill Galleries, Inc.*, 2020 WL 8514826, at *2-3 (S.D.N.Y. Dec. 4, 2020) (citing *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *5 (S.D.N.Y. 2015)). Indeed, the non-disparagement clause included in the settlement agreement contains the necessary "carve-out" allowing truthful statements about Plaintiff's experiences litigation the action or the facts and circumstances underlying the claims asserted in the action. *Sarit v. Westside Tomato, Inc.*, 18-cv-11524 (RA), 2021 WL 2000328, *2 (S.D.N.Y. May 19, 2021). While the settlement agreement does contain a mutual general release, which the parties take opposing positions on, that issue will be discussed in further detail during the parties' hearing on June 18, 2025.

The Honorable Lara K. Eshkenazi
June 11, 2025
Page 5 of 7

        *i.*    *Defendant's Position Regarding the Inclusion of a Mutual General Release*

Defendant submits that the inclusion of a general release is not problematic because the release is also mutual and plaintiff is no longer employed by Defendant. *Gallagher v. Mountain Mortg. Corp.*, 22-cv-0715 (JMW), 2023 WL 5977919, *10 (E.D.N.Y. Sept. 14, 2023) ("[T]he Court is satisfied that the broad mutual release is fair and reasonable and the result of a balanced negotiation between the parties. The release is binding on both Plaintiff and Defendant and serves as a 'walk away provision.'"); *Sarit*, 2021 WL 2000328 at *2 ("[C]ourts look more favorably upon broad mutual release provisions where 'the employer and employee have ceased their employment relationship' and the mutual release therefore 'operates as a walk away provision [that] permits each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit.'") (second alteration in original) (citations omitted). *See also Huang v. Sunstone Pathology Servs. PC, No.* 23-cv-05420 (JMW), 2024 WL 3937750, *4 (E.D.N.Y. Aug. 26, 2024).

Indeed, courts in the Second Circuit routinely approve mutual general releases under circumstances akin to those present here. *Lira-Flores v. Rancho Cibaeno Restaurant Corp.,* 20-cv-5354 (CLP), 2021 WL 11712920 (E.D.N.Y. Oct. 25, 2021); *Tapia v. Nations Roof East, LLC,* 21-cv-1358 (BCM), 2022 WL 2104245, at *2 (S.D.N.Y. June 10, 2022). Furthermore, as noted above, the settlement amount in the instant case exceeds the value of Plaintiff's FLSA claim. This is yet another factor demonstrating the fairness of a general release provision here. *See Plizga v. Little Poland Restaurant Inc.,* 15-cv-08820 (LAK)(BCM), 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (Approving a mutual general release in FLSA settlement agreement and noting that when "a plaintiff who no longer works for the defendants files individual claims, including an FLSA claim, and then settles her case for more than she could likely win at trial on that FLSA claim, she should not be forbidden by the courts from entering into the same mutual general releases that are the norm in most other non-class litigation settlements.).

Critically, settlement discussions here focused most heavily on the non-FLSA claims asserted and were conducted between competent counsel at all stages. This, in addition to the reasons stated above, demonstrates that there is no unfairness or unreasonableness in including the general release provision currently contained in the Parties' settlement agreement.

## III.  <u>ATTORNEYS FEES AND COSTS ARE ALSO REASONABLE</u>

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely

The Honorable Lara K. Eshkenazi
June 11, 2025
Page 6 of 7

affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiff's counsel's request that the Court approve fees of one-third of the settlement is "consistent with the trend in this Circuit." *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiff's counsel's requested fee of $10,000.00, or one-third of the settlement, is wholly reasonable and consistent with that law.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439.

In order to conduct the lodestar crosscheck, Plaintiff's counsel multiplied the attorney hours spent on the case by the attorney's reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Jeffrey R. Maguire, a Partner at the Firm with sixteen years' experience would seek $400.00 per hour. "Courts within this District generally approve rates of $300-$400 per hour for partners in FLSA cases." *Mobley v. Five Gems Mgmt. Corp.*, 2018 WL 1684343, at *4, n.7 (S.D.N.Y. Apr. 6, 2018).

The Firm expended approximately 36.4 attorney hours and calculated its lodestar to be $14,560.00. Thus, the Firm's requested fee of $10,000.00 does not require a multiplier. Accordingly, Plaintiff's attorneys' fees are reasonable in light of the risk associated with a contingent fee FLSA case. Plaintiff's counsel's contemporaneous billing records are attached as **Exhibit 2**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $413.75 in out-of-pocket expenses, comprised of the filing fee, and postage.

## IV.    <u>CONCLUSION</u>

In light of the foregoing, the Parties respectfully request that the Court approve their settlement of Plaintiff's FLSA claims, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement and entering judgment in the event of a breach in accordance with the

The Honorable Lara K. Eshkenazi
June 11, 2025
Page 7 of 7

agreement's terms. A proposed stipulation and order of dismissal is attached to the settlement agreement. *See* Exhibit 1.

Respectfully submitted,

Jeffrey R. Maguire
Stevenson Marino LLP